# Folmer's Appeal.

## The Penn Mutual Relief Association versus Catherine F. Folmer and William Potee and Wife.

1. While it is the undoubted rule, that the sound interpretation and meaning of a statute, on a view of the enacting clause and proviso taken and construed together, is to prevail, yet if the principal object of the act can be accomplished and stand under the restriction of the proviso, the same is not to be held void for repugnance.

2. The constitution of a relief association provided that "this association shall have for its object the payment to the family of the deceased member of so many dollars as there are members of the association;" and further, that the assessment "shall be paid to his legal representatives or to such person or persons as he may have designated or appointed in writing. * * * Provided always, that when such member shall leave a widow or children, he shall have no power to deprive her or them of the benefits specified in this article, by will or otherwise, but the same shall be paid to her or them absolutely." The application of the assured was made in favor of a niece with whose family he was living, but at the time of his death he had a married daughter living apart and independent of him. The court below awarded the fund arising from the assessment to the daughter. Held, that it should have been awarded to the niece, as the acceptance of the application by the association was a contract on its part to pay the money to the niece on the death of the assured.

[Folmer's Appeal.]

May 10th 1878.   Before AGNEW, C. J., MERCUR, GORDON, PAXSON, WOODWARD and TRUNKEY, JJ.   SHARSWOOD, J., absent.

Appeal from the Court of Common Pleas of *York county:* Of May Term 1878, No. 193.   In Equity.

Appeal of Jacob Folmer, guardian *ad litem* of Catharine F. Folmer, from the decree of the court.

This was a bill of interpleader wherein the Penn Mutual Relief Association of York, Pennsylvania, were plaintiffs, and Catharine F. Folmer and William Potee and Catharine, his wife, were defendants.   The question to be determined, was the person duly entitled to receive the amount of a sum of money accruing by an assessment levied upon the members of the Penn Mutual Relief Association of York, Pennsylvania, upon the death of one Frederick Schwehr, said fund, to wit, the some of $1072, being claimed respectively by the said Catharine F. Folmer, by reason of her being the appointee in favor of whom the said Frederick Schwehr in his lifetime made application for membership in said association, and by Catharine, or Kate Potee, wife of the said William Potee, by reason of her being a daughter of the said Frederick Schwehr.

The court below, Wickes, A. L. J., made a decree awarding said fund to Mrs. Potee, and from this decree this appeal was taken. The other material facts will be found fully stated in the opinion of this court.

*George W. McElroy* and *George Fisher,* for appellant.—The certificate of membership granted to Schwehr was in the nature of a life insurance policy, and like it a contract, in the construction of which the motive that led to its execution, as well as the object intended to be effected by it, should be considered.   The motive manifestly was to make a future provision for Catharine Folmer, and the object the payment of the fund to her at his death, as his appointee.   In sect. 2 of art. 6, the words "shall have no power * * * by will or otherwise," in the proviso, mean simply that the insured could not by will, devise or bequeath, or in his lifetime, assign, transfer or pledge the fund, payable after his death, to any other person than those specified.   Not having done so, how can the proviso effect what was done at the time the insurance was made.   There was a definite promise on the part of the association to pay to the appointee of Schwehr "in favor of whom" the insurance was effected, and no other meaning can be given to the contract.   A rational interpretation of the charter of the association does not make Mrs. Potee a member of the assured's family.

*Blackford* and *Stewart,* for appellees.—Catharine Potee was the only child of the assured, and she alone constituted his family, within the meaning of the charter of the association, and to her alone was the money payable.   The very object of the crea-

tion of the association was to provide for the family of assured, and the right of appointment only existed subject to the right of the family. So long as the assured had a wife or family, he had no control over the benefits to arise from his insurance ; it was only on the event of having no family that his appointment was valid. The effect of the proviso in sect. 2 of art. 6, is to limit and abridge the authority of the association to contract, and a limitation of authority by a proviso is a negation thereof: The Commissioners of Kensington *v.* Keith, 2 Barr 218. In a charter creating a private corporation, the proviso must control : Dugan *v.* Bridge Co., 3 Casey 303 ; Packer *v.* Sunbury and Erie Railroad Co., 7 Harris 211.

Mr. Justice WOODWARD delivered the opinion of the court, October 7th 1878.

Frederick Schwehr became a member of The Penn Mutual Relief Association on the 21st of April 1873. At that time the constitution of the corporation, which had been adopted in April 1869, was in force. The second article was in these words : " This association shall have for its object the cash payment to the family of a deceased member, within forty days after death, of as many dollars as there are members of the association." By the second section of the sixth article, it was declared : " On the death of a member, a sum equal to one dollar for each enrolled member on the books of the association, at the date of his death, shall be paid to his legal representatives, or to such person or persons as he may have designated in writing, either by his own hand or that of another person by his direction or request. Provided always, that where such a member leaves a widow or children, he shall have no power to deprive her or them of the benefits specified in this article by will or otherwise, but the same shall be paid to her or them absolutely." On the 5th of November 1873, the constitution was amended by virtue of a decree of the Court of Common Pleas of the county of York. The second article was so altered as to read thus : " The object of this association shall be the relief of widows, orphans or families of deceased members." The sixth article was wholly changed. Its provisions were supplied by the following provisions of the fifth amended article : " Section 1. On the notification of the death of any member to the secretary of the association, * * * an assessment shall be made upon each member for a sum equal to one dollar and ten cents, of which one dollar shall be applied to the relief of the widow, orphans or family of such deceased member." Section 2. " Within ten days after the assessment shall have been paid to the secretary, the sum due—not exceeding one dollar from each member at the time of his death—shall be paid to the widow, orphans or family of the deceased by the proper officers."

In filling up the form of his application, Mr. Schwehr declared

that the benefits from his membership should accrue to Catharine F. Folmer. Her name was added to the words, " In favor of," which were contained in the printed blank in use by the association in April 1873. The beneficiary was the daughter of Jacob Folmer, whose wife was the sister of the deceased wife of Mr. Schwehr. When the application for membership was made, and down to the time of his death, Mr. Schwehr lived at the public house kept by Mr. Folmer in the village of Hanover. Catharine Potee, one of the defendants, is the daughter and only child of Mr. Schwehr, and at the date of the application was married and living with her husband. The benefits accruing from the association were claimed by her after her father's death, and under the construction given to the terms of the charter, her claim was sustained by the Court of Common Pleas.

It is entirely certain that the contract which was found by the decree to be established, was one which Mr. Schwehr did not intend to make. There are no facts which tend to show that he would have sought membership in the association if he had believed that his daughter would engross its benefits. They were living apart. She had a home and family of her own. So far as he had domestic relations, he was a member of the family of Jacob Folmer. It is true there was the tie of blood between them. As his legal repre-sentative, she inherited his undevised and unbequeathed estate. But there was no intercourse or connection involving protection on one side or dependence on the other. The provision he designed to make was in favor of Catharine Folmer, the niece of his dead wife, the child of his sister-in-law, and a member of the same family with which he lived. To secure such a provision to an identified bene-ficiary was the very purpose of the contract. And the purpose was expressed with absolute directness. The association accepted the proposition made to them, and bound themselves to pay the fund to become due at his death, not to the legal representatives of the applicant, nor to his daughter, but " for the use of the person," in the words of the sixth article of the constitution as it originally stood, whom he had " designated or appointed in writing." As the charter terms were construed by the Common Pleas, a new contract was set up in lieu of that which Mr. Schwehr actually made, his motive for making it was disregarded, and the object he meant to attain was wholly subverted. To warrant an interpretation produc-tive of such grave mischief, the meaning of the words interpreted should be unmistakable.

Mrs. Potee's claim is based on the terms of the proviso to the second section of the sixth article of the charter of 1869, which declared that where a member of the association should leave a widow or children, he should " have no power to deprive her or them of the benefits specified in this article, by will or otherwise," but that " the same should be paid to her or them absolutely." A pro-

viso is defined to be something engrafted upon a preceding enactment, for the purpose of taking special cases out of the general enactment, and providing specially for them : Potter's Dwarris 118. It is to be strictly construed; it takes no case out of the enacting clause which is not fairly within the terms of the proviso : United States *v.* Dickson, 15 Peters 141. What were the "special cases" intended to be taken out of the operative clause of the sixth article of this charter ? Two classes of persons entitled to benefits on the death of members were specified. They were, first, the legal representatives of the members, and, second, such persons as the members, at the time of uniting with the association, "may have designated or appointed in writing." If the prohibition embodied in the proviso must be extended to every case where a member may leave a wife or child, a provision in favor of any beneficiary would in any such case become a nullity. The widow and child would take under the charter, and would take in every instance as a legal representative. The effect would be to strip from the charter the clause in favor of "a person or persons designated or appointed" by a member. It does not seem credible that in framing the constitution, the association could have had such a result in contemplation. The whole instrument is to have such fair and rational construction as to make all its provisions operative and efficient. As was said in 1 Kent's Commentaries 463, "the principle undoubtedly is, that the sound interpretation and meaning of a statute, on a view of the enacting clause and proviso taken and construed together, is to prevail. If the principal object of the act can be accomplished, and stand under the restriction of the proviso, the same is not to be held void for repugnancy."

A meaning may be extracted from the terms of the sixth article consistent with the maintenance and enforcement of the actual contract made by Mr. Schwehr with the association. The proviso denied to any member the right to deprive his widow or children of benefits by will or otherwise. The words used implied the ownership of the fund and the right to control it at the time of the member's death. They implied also such ownership and such right of control during his lifetime. The benefits to which the proviso referred, constituted a fund in the name of the member, acquired by and belonging to himself, and transmissible to his legal representatives at his death, which the charter forbade him to sell, pledge or bequeath to the prejudice of his widow or any child who should survive him. This was not such a fund. It had never accrued to Mr. Schwehr, had never been claimed by him, and had never been subject to his control. In the very act of creating it, he had placed it beyond his own reach. It never for a moment became part of his estate which his heirs could on any ground or by any device absorb. A restriction against a gift, assignment or bequest by a member of rights secured to another than himself, could not have been the

object of the charter, for it could not have entered the minds of its framers that he would ever attempt to exercise dominion over property to which he had no claim. The prohibition was intended to apply to the first-class of beneficiaries—members whose interests, at their decease, would survive to their legal representatives. To carry it further would be to mutilate the charter as well as to destroy contract rights.

Undoubtedly it has been the controlling idea of this association from the outset to provide for the families of members. This is manifest from the declaration of the object of the organization in the second article of the original constitution, and in the second section of the fifth amended article. Benefits were to be paid " to the family " in the first instance, and " to the widow, orphans or family " in the second. Possibly an insurance for the benefit of an entire stranger for a consideration paid to the member, or even to secure the debt of a creditor, could not be sustained under the charter. Even then, however, it might be a question whether the benefits would fall to the heirs, or the contract would be held to be *ultra vires* and simply void. Such a question does not now arise. Catharine Folmer was within the circle of the family of Mr. Schwehr, and under his contract with the association and a rational interpretation of the charter, she has a right to the fund in controversy.

It is not necessary to inquire into the effect of the amendments in the second and fifth articles of the constitution. The changes made were in some respects material, but the rights of the parties must rest on the provisions which were in force when Mr. Schwehr became a member of the association.

> The decree of the Court of Common Pleas is reversed, at the costs of the appellees, and it is now ordered and adjudged that the principal sum in controversy in this suit, amounting to $1072, with the interest accrued and due thereon, to be ascertained by the prothonotary of that court, be paid to the appellant, Jacob Folmer; guardian *ad litem* of Catharine F. Folmer, by The Penn Mutual Relief Association of York, Pennsylvania, the plaintiffs and appellees.