## Housekeeper's Estate.

*Taxation—Inheritance transfer tax—Beneficial association—Co-operative Wage Dividend Fund—Transfer of principal before death—Act of June 20, 1919—Philadelphia Rapid Transit Company's employees.*

1. Where the legal object of a transfer of money to a trustee is to retain in the donor the beneficial ownership during his life and to postpone the enjoyment of the principal of the fund to a beneficiary until the donor's death, the principal of the fund is subject on the donor's death to the inheritance transfer tax imposed by the Act of June 20, 1919, P. L. 521.

2. Where the employees of a corporation pay over to a trustee a portion of their wages under a plan by which the trustee invests the fund, and pays over to each member the income therefrom during life and the principal to him on leaving the employment of the company, or on his death to the beneficiary named in his certificate of membership or to his estate, and the certificates are not transferable, an inheritance tax is due on the principal passing to the beneficiary on the member's death.

Appeal from register of wills. O. C. Phila. Co., July T., 1927, No. 2142.

Allen Hunter White (Ballard, Spahr, Andrews & Ingersoll, of counsel), for petitioner, Edward B. Martin, guardian of Emma May Langford.

K. H. Gilbert, for Commonwealth.

STEARNE, J., Jan. 9, 1928.—This is an appeal from an appraisement and assessment for transfer inheritance tax of the interest of decedent in the

Housekeeper's Estate.

Co-operative Wage Dividend Fund. of the Philadelphia Rapid Transit Company.

The Commonwealth claims a tax under section (c) of article I of the Act of June 20, 1919, P. L. 521, reading as follows:

"Section 1. . . . that a tax shall be . . . imposed upon the transfer of any property. . . . (c) when the transfer is . . . by deed, grant, bargain, sale or gift . . . intended to take effect in possession or enjoyment at or after death."

The tangible property sought to be taxed is represented by five certificates, in the name of the decedent, with the aggregate face value of $691.01.

Certificate No. 5326 for five shares, in amount $149.98, issued Dec. 30, 1922, is styled "certificate of participation in 55,000 shares Philadelphia Rapid Transit Company stock held by the trustees Co-operative Wage Dividend Fund." It certifies that decedent, while an employee of the company, is entitled to 2½ per cent. quarterly dividends upon the shares represented by the certificate so long as the 6 per cent. Philadelphia Rapid Transit Company dividend is paid. It further stipulates that, upon leaving the service of the company, the owner, or, in case of his death, the owner's beneficiary, will receive, at the option of the trustees, the shares represented by the certificate, or cash to the amount of $30 per share or fraction; that by authority of resolution of Co-operative Council, ratified by convention of employers and employees, the voting power of "this stock" is lodged in the trustees. It is signed by the president, treasurer and assistant treasurer. At the top of the certificate there appear these words, "55,000 shares, cost $1,650,000. At the bottom is printed, "this certificate is not transferable."

.Certificate No. 5645, dated Dec. 31, 1923, for 4.81 shares, amount $144.34, is entitled "certificate of participation in 1923 purchases of Philadelphia Rapid Transit Company stock. . . ." The remaining wording is substantially the same as in the preceding certificate. At the bottom of certificate appears this wording, "this certificate, representing membership and interest in the fund, is not transferable."

Certificate No. 6165, dated Dec. 31, 1924, for 4.74 shares, amount $161.32, appears in different form. Its title relates. to 1924 purchases of stock by the fund, and certifies that decedent "has participated in 1924 purchases of shares of the capital stock of Philadelphia Rapid Transit Company in the amounts designated above." This certificate entitles the employee to whom it is issued to a proportionate share of the income received from the securities purchased with the amounts *deposited* during 1924, when and as distributed by the trustees in accordance with the regulations of the Co-operative Wage Dividend Fund. It is further stated that on leaving the service of the company, the owner of this certificate, or, in case of death, the owner's beneficiary, will receive, at the option of the trustees, the securities or cash represented by this certificate. Also, that "This certificate, representing membership and interest in the fund, is issued and held subject to the regulations of the Co-operative Wage Dividend Fund, and is not transferable."

The remaining two certificates, No. 9828, for 4.27 shares, in amount $162.36, dated Dec. 31, 1925, and No. 6190, for 1.87 shares, in amount $73.01, dated Dec. 31, 1926, are in the same form as certificate No. 6165, and are stated to represent the trustees' purchases of stock for the years 1925 and 1926.

The decedent died a resident of Philadelphia County, Feb. 10, 1927. At the time of his death he was an employee of the Philadelphia Rapid Transit Company, and had been such since May 30, 1895. On May 24, 1922, he made application to become a member of the Co-operative Wage Dividend Fund,

and was on that date automatically admitted to membership therein. He designated his granddaughter, Emma May Housekeeper, now Langford, as his beneficiary.

From the record and evidence the "Co-operative Wage Fund" (this title being the present authorized title of the organization) is a volunteer unincorporated association, composed of employees of the Philadelphia Rapid Transit Company. The association has duly adopted "regulations," which have been amended from time to time. Those in effect at the death of decedent, as offered in evidence, were amended to Sept. 15, 1925.

The expressed object of the "fund" is found in the first article of the regulations, which read as follows:

## "ARTICLE I.

### "*Object.*

"Section 1. The Co-operative Wage, earned by the combined and co-operative efforts of the employees of the Philadelphia Rapid Transit Company, should, as evidence of their financial responsibility, be kept together in a special fund.

"Those representing capital have always spoken authoritatively because of their money power. Men and Management with money power added are stronger than is capital standing alone.

"The Co-operative Wage Fund is established so that the employees, by keeping their Co-operative Wage undivided, can together, as time passes, more and more effectively function as a principal in the hiring of capital as against the heretofore universal practice of capital hiring labor."

An analysis of the regulations reveals: Any regular employee of the Philadelphia Rapid Transit Company automatically becomes a member of the fund by his formal written application, approved by his superior officer, wherein he accepts and agrees to the regulations then existing and as may hereafter be duly amended; he authorizes the transit company to withhold and to pay a proportionate part of his wages, from time to time, as fixed by the proper officials of the fund, and the moneys or funds so held are to be administered by trustees; the trustees are to invest the moneys and are not limited to legal securities, and are particularly authorized to invest in Philadelphia Rapid Transit Company stock; trustees are to make disposition thereof as provided for in the regulations; they are to issue to the members of the fund certificates equal to the amount which each member has *deposited;* when a member ceases to be an employee, or upon his death, then to pay either to the employee or to the employee's designated beneficiary (should he be deceased), or if none, then to his estate, the amount in cash of such co-operative wage then paid in by such *depositor*, or the *pro rata* share of securities represented by such certificate; the certificates are termed "non-transferable participation certificates;" the trustees are directed to distribute periodically to the holders of certificates the income accruing to the fund; the applicant states his identification with the company, gives some of his family history, his residence, the name, address and relationship of his beneficiary, and reserves the right to change the beneficiary; the application is dated and is signed both by the applicant and by the beneficiary, and requires the written approval of the superintendent or department head.

Under the regulations, the fund is administered by a board of trustees, appointed regularly as therein provided. The trustees are to invest and reinvest the funds, and their powers and duties are clearly defined.

The trustees are given custody of all funds and securities, together with all voting rights; rights as legal title holders to the securities in their custody are expressly conferred by the regulations upon the trustees.

The trustees appear to be four in number, three of whom must be designated officers of the Co-operative Welfare Association (an entirely different organization from the Co-operative Wage Fund), and the fourth, the vice-president-finance of the Philadelphia Rapid Transit Company, all of whom must be "*depositors*" in the fund. The regulations state that the trustees are under the direction of the "Co-operative Council." While the regulations appear silent as to the *personnel* of the Co-operative Council, yet an amendment to the regulations under date of April 20, 1926, offered in evidence, states that it is "composed of the entire membership of the general committees—employee and employer. . . ."

Section 6, article v, of the regulations provides: "The trustees shall distribute to members the income accruing to the fund, when, in the judgment of the trustees, the amount so received justifies such disbursement."

Section 3, article v, provides: "The trustees shall return to any member ceasing to be an employee of the Philadelphia Rapid Transit Company, or to the designated beneficiary of a deceased member (or, in case there be no living named beneficiary, then the personal representative of the deceased member), the amount or amounts then paid into the fund by such depositor, or the *pro rata* share of securities and cash represented by such certificates, as may be determined by the trustees to be for the best interests of all members of the fund. Payments shall be made within thirty days after notification and upon surrender of participation certificate."

Under these facts, the Commonwealth claims a transfer inheritance tax upon the theory that it was in effect a transfer made and intended to take effect after death, the grantor retaining the beneficial enjoyment during his own lifetime. The guardian of the minor beneficiary contends that the scheme is an absolute transfer of title, possession and control, which exempts the fund from tax, as in the cases of insurance and beneficial associations, where the fund is payable to a designated beneficiary.

After a careful examination of the entire record and a consideration of all the authorities which I have been able to find, I have formed the opinion that the contention of the Commonwealth is correct and that the certificates are taxable.

The principle which excluded the proceeds of life insurance policies or beneficial funds from inheritance taxation is that such funds have never formed part of the decedent's estate. They do not, therefore, "pass from" the estate of the insured, but directly from the assets of the insuring companies. Afer years of experience and the careful compilation of vital statistics, insurance companies are able to determine with reasonable accuracy the life expectancy of any individual at a given age. From this data a premium for insurance is fixed. The policy-holder receives an insurance protection upon the payment of the fixed premium. The contract is a cold business proposition which may inure to the benefit of either or both. The named beneficiary's interest is created by the terms of the *contract* itself and not because of the accumulation of moneys paid in by the policy-holder. If the policy-holder happens to die shortly after the purchase of the policy, the beneficiary takes the full amount or face of the policy, which is usually in excess of the total amount of premiums paid in. There are numerous variations in insurance contracts, but the basic principle remains the same.

Beneficial, accident, health and occupational insurance all have the same fundamental contractual basis.

It is for this reason that no tax is assessable. See Frank's Estate, 9 Pa. C. C. Reps. 662; Vogel's Estate, 1 Pa. C. C. Reps. 352; Murphy's Estate, 21 Pa. Superior Ct. 384.

A savings fund account presents a different situation. Here the "depositor" pays in his own money. When he withdraws it, he takes out exactly what he has paid in, plus interest. Admittedly, such a fund is an asset of an estate and is clearly taxable.

Where a stipulation is attached to a savings fund account that, upon the decease of a depositor, a named survivor is entitled to withdraw the fund, or where the account is in joint names with similar stipulation (except husband and wife), it is well settled that the fund may still be part of the depositor's estate and be subject to all the burdens as to debts, taxes, etc. See Flanagan v. Nash, 185 Pa. 41; Grady v. Sheehan, 256 Pa. 377.

It is to be noted that under the Co-operative Wage Fund plan it is only the amount of the employee's own wages which he has deposited in the fund which passes to the beneficiary. The earnings from the fund are periodically paid to the employee himself during his own lifetime. There is no added insurance or beneficial feature to the scheme.

I note that the certificates are not transferable and neither are they attachable. See Building and Loan Ass'n v. Dogostino, 8 D. & C. 161. This does not, to my mind, affect the question. The Act of June 30, 1923, P. L. 984, authorized the passage of such a rule and by-law. While an employee may not assign his certificate because of such statute, yet at any time he can collect the full amount of the fund by resigning from the company. Furthermore, while remaining as an employee, he continues to enjoy the full fruits of his savings by receiving, periodically, the earned income therefrom. The employee also reserves the full right to change, without consent, the named beneficiary.

Attention is particularly directed to the *object* of, the fund. It plainly states that the "combined and co-operative" efforts of employees should be kept in a special fund. Why? As evidence of *their* financial responsibility. It says that capital speaks with authority because of money power, but that labor with money is stronger than capital alone. That the employees by the medium of this fund *hire capital*, rather than still permit capital to hire labor. The purpose is a large conception, and with which I have no quarrel. However, the purpose is manifest. The employee's own wages are used to create a joint fund with which to purchase stock of the company (or other securities if necessary) and thus enable the employees collectively to become owners of the company. It encourages thrift and is certainly an advanced idea. In the meantime, the employee receives his profits from his savings. Should he leave the company he receives all that he pays in, and when he dies the fund goes to his designated beneficiary, or, in default, to his estate.

The words "depositor" and "deposited" constantly appear in the regulations. The creator of this broad and beneficial scheme manifestly had in mind the accumulation of the employees' savings, their use and investment, the protection against assignment and attachment, the proviso as to the severance of the employment and the payment after death of the fund according to the employee's wishes.

While all of this is worthy and beneficent, yet it could hardly be said to partake of an insurance or beneficial contract. It is certainly more analogous to a savings fund account.

As the Act of 1919 taxes not only the estates of decedents, but "transfers of any property . . . by deed, grant, bargain, sale or gift . . . intended to take effect in possession or enjoyment at or after death,"'I do not think the question as to whether the scheme is testamentary requires consideration.

The guardian of the beneficiary relies chiefly upon Vogel's Estate, 1 Pa. C. C. Reps. 352, and on Folmer's Appeal, 87 Pa. 133. Both of these cases relate to proceeds from relief or beneficial associations. For the reasons given herein, I do not feel that the law, under their particular facts, applies to the present case.

It must be conceded that title to the fund passed to the trustees, subject to being divested upon the employee ceasing to remain in the employ of the company. However, the employee continues to receive the enjoyment of the fund for life, and the beneficiary takes, and is only intended to take, the principal of the fund upon the death of the employee.

Under these circumstances, I feel that the present case is ruled by Reish v. Com., 106 Pa. 521; Todd's Estate (No. 2), 237 Pa. 466, and Spangler's Estate, 281 Pa. 118.

I fully recognize that in Reish v. Com., supra, the scheme or device adopted amounted to a fraud and was a manifest attempt to evade taxation. Of course, in the present case there is not the slightest evidence of a fraudulent intent. The whole scheme was for the assistance and protection of the company's employees. However, irrespective of the motive, the legal effect is to retain in the donor the beneficial membership during his life and to postpone the enjoyment of the property conveyed to the beneficiary until after donor's death.

It is for this reason I feel the tax is due and that the reasoning used in the foregoing cases has an exceptional application to the present case.

In Reish v. Com., supra, decedent deeded real estate in fee to his brother, and transferred to him absolutely certain personal property. Simultaneously,, the decedent took back a bond from the brother to secure the net profits from the property which he transferred for and during the lifetime of the grantor. Upon the death of the grantor, a tax was claimed and sustained upon this transfer. Justice Clark said (page 526): "John Reish was entitled to receive the same income and profits from the property during his life as if the transfer had not been made. One certainly cannot be considered as in the actual enjoyment of an estate who has no right to the profits or incomes arising or accruing therefrom . . . the whole matter depends upon the single fact whether or not the transfer was made or intended to take effect in enjoyment at the death of the grantor. The policy of the law will not permit the owner of an estate to defeat the plain provisions of the collateral inheritance law by any device which secures to him, for life, the income, profits and enjoyment thereof; it must be by such a conveyance as parts with the possession, the title and the enjoyment in the grantor's lifetime."

In Todd's Estate, supra, Justice Potter said (page 472): "The effect of the scheme adopted in the present case was to give to the testatrix a life income . . . and the full enjoyment of the principal could be had by the legatees only after the death of the testatrix. The position taken by the auditor and affirmed by the court below in awarding to the Commonwealth collateral inheritance tax on the legacies given with a reservation of interest thereon during the life of the testatrix was entirely correct."

In Spangler's Estate, supra, Justice Simpson said (page 122): "The manifest purpose of our collateral inheritance tax law is to subject property, limited by deed in the manner stated in the statute, to taxation, because it is

Housekeeper's Estate.

still substantially the property of the grantor and does not actually pass, nor is it intended to pass, to the collateral beneficiaries until his death, and, hence, it is essentially similar in that respect to a devolution of property by testacy or intestacy upon the death of the owner."

While not directly in point, nevertheless, the principles set forth in Hartley's Estate, 8 D. & C. 164, decided by our court, sustain the principle that a transfer of property, retaining the absolute and entire enjoyment of the income until death, subjects the fund to transfer inheritance tax.

As the manifest *effect* of the Co-operative Wage Fund scheme is to give the owners of the certificates a life income and the full enjoyment of the principal' passes to the designated beneficiary only after the owner's decease, section 1 *(c)* of the Act of 1919 clearly applies.

And now, Jan. 9, 1928, the appeal is dismissed, the assessment of the register confirmed, and the record is remitted to the register.