[Civ. No. 24655. Second Dist., Div. One. Dec. 29, 1960.]

LILLY M. CLARK, Respondent, v. CITY OF LOS ANGELES et al., Appellants.

Roger Arnebergh, City Attorney, Bourke Jones and John J. Tully, Jr., Assistant City Attorneys, and Weldon L. Weber, Deputy City Attorney, for Appellants.

Jones & Tollefson and Philip F. Jones for Respondent.

WOOD, P. J.—Appeal by the city of Los Angeles and the board of pension commissioners of the city from a judgment ordering that a writ of mandate issue requiring the city and board to order reinstatement of Mrs. Clark's (petitioner's) pension rights as the widow of Edwin I. Clark; and requiring payment, from the fire and police pension fund of the city, to petitioner as such widow, amounts accrued and payable to her from February 21, 1958, to entry of the judgment; and requiring payment of a monthly pension, from said fund, from entry of the judgment until her remarriage or death.

Edwin I. Clark, who was a retired lieutenant of the police department of the city, died on January 12, 1949. A pension of $156.21 a month was paid from said pension fund to petitioner, as Clark's widow, from January 13, 1949, until her marriage to Herman Peterson on September 20, 1952. (An additional amount of $39.05 a month was paid from the fund to petitioner for the benefit of a minor child of petitioner and Clark. That amount was paid from January 13, 1949, until January 10, 1950, when the child became 18 years of age.) Petitioner and Peterson lived together in Los Angeles County until June 15, 1956, when they separated. On May 27, 1957, petitioner commenced an action in Los Angeles County for an annulment of her marriage to Peterson.

There were two causes of action in the complaint for an annulment. In the first cause of action, it was alleged that defendant (Peterson), at the time of said marriage, falsely stated that he intended to live as husband and wife with plaintiff, and that he intended to perform all marital obligations. He refused to have marital intercourse with plaintiff and refused to live with her. About June 15, 1956, he stated that he had no intentions of performing any marital obligations,

and that the only reason that he had married plaintiff was to obtain an inexpensive cook and housekeeper. Plaintiff "discovered defendant's fraud" about June 15, 1956, and since that time she has not cohabited with defendant. In the second cause of action it was alleged that, at the time of marriage, defendant was impotent and that such physical condition continues and appears to be incurable. The allegation of the first cause of action regarding the date plaintiff discovered the fraud of defendant was incorporated by reference in the second cause of action. Peterson did not file an answer or other pleading in the action for an annulment, and on January 29, 1958, a judgment (by default) was entered therein which was titled "JUDGMENT OF ANNULMENT OF VOIDABLE MARRIAGE (DEFAULT)." The judgment included the following statement: "It is ordered, adjudged and decreed that the marriage heretofore entered into by and between plaintiff [petitioner] and defendant [Peterson] be and the same is hereby annulled. . . ." That judgment became final before this mandamus proceeding was commenced.

On February 21, 1958, petitioner requested, in writing, that the Board of Pension Commissioners reinstate her pension. On April 1, 1958, the board denied her request. On June 27, 1958, petitioner filed a claim with the Los Angeles city clerk wherein she demanded the payment to her, in the future, of a pension based upon the salary attached to the rank of a lieutenant of the police department, and the payment to her of $1,200, representing a pension for six months prior to filing the claim. (She did not make a claim for the discontinued payments covering the time from her marriage to Peterson to the making of her claim; and she did not seek such payments in this mandamus proceeding.) On July 30, 1958, petitioner filed a claim with the city clerk for "the pension due me [her] in the amount of $11,000.00 in addition to the claim I [she] filed on June 27, 1958. Amount waived, pursuant to Sec. 376 of the Charter of the City of Los Angeles, $9000.00." On November 18, 1958, the board denied the claims of petitioner.

On July 15, 1959, she filed a petition for a writ of mandate compelling the city and the board to reinstate her pension rights as the widow of Clark, and to order payment, from the fire and police fund of the city, to petitioner, as such widow, sums accrued and payable to her at the rate of $320.50 a month from January 29, 1958 (date of entry of annulment judgment), through November 30, 1958, and at the rate of $338.50

a month from December 1, 1958, to entry of judgment herein (in the mandamus proceeding) ; and to order payment to petitioner, from said fund, of a monthly pension until her remarriage or death, whichever should first occur. An alternative writ was issued.

The city and the board, in a reply to the alternative writ, alleged as affirmative defenses that petitioner did not seek an annulment in good faith but did so with the intent to defraud them and to "restore herself to their pension rolls"; petitioner's action for an annulment was barred by the provisions of section 83, subdivisions 4 and 6, of the Civil Code; petitioner's right to be paid a pension as the widow of Clark ceased upon her marriage to Peterson; the judgment of annulment constitutes a fraud upon them and is ineffective and invalid as to them; and that petitioner failed to comply with sections 363 and 376 of the charter of the city.

The court found as follows: The annulment judgment has become final. By virtue of the annulment judgment it was judicially determined that no valid marriage ever existed between petitioner and Peterson, and therefore petitioner remains the unremarried widow of Clark. Petitioner participated in a marriage ceremony with Peterson on September 20, 1952, "but it is not true that any valid marriage ever existed between" them. Petitioner sought and obtained the annulment in good faith without any fraud or collusion as to Peterson or as to the city and board in this mandamus proceeding. The city and board have not changed their position, to their detriment, in reliance upon petitioner's purported marriage or by the annulment of the purported marriage. The city and board herein have not been, and will not be, prejudiced by the purported marriage or by the reinstatement of petitioner's pension benefits as requested in the proceedings. Petitioner's action for annulment was not, and is not, barred by the provisions of section 83, subdivision 4 or 6, of the Civil Code, as to Peterson or as to the city and the board.

The judgment was that a peremptory writ of mandate should issue requiring the city and board: (1) to order reinstatement of petitioner's pension rights "as the unremarried widow of Edwin I. Clark"; (2) to order payment, from the pension fund, to petitioner as such widow amounts accrued and payable to her from February 21, 1958, to entry of judgment; and (3) to order payment to her of a monthly pension (specified therein) from the pension fund, beginning with the date of

entry of judgment and continuing until her remarriage or death, whichever occurs first.

Appellants (city and board) contend that the trial court erred in "holding" that the judgment obtained by petitioner, annulling her marriage to Peterson, is conclusive as to the city and board; that the court erred in deciding that petitioner's causes of action for an annulment were not, or are not, barred by the provisions of section 83, subdivision 4 or 6, of the Civil Code; and that petitioner failed to prove that she was entitled to an annulment of her marriage to Peterson.

With respect to appellants' contention that the court erred in "holding" that the annulment judgment was conclusive as to them, appellants argue to the effect that since they were not parties to the annulment action and are not claiming under either of the parties to the action (Clark or Peterson), the annulment judgment is not conclusive as to appellants, and that the petitioner herein (Mrs. Clark) "must prove anew as against appellants" that her marriage to Peterson was subject to annulment. Appellants cite section 86 of the Civil Code which provides: "A judgment of nullity of marriage rendered is conclusive only as against the parties to the action and those claiming under them." They also cite *Price* v. *Price,* 24 Cal. App.2d 462 [75 P.2d 655], *Estate of Gosnell,* 63 Cal.App.2d 38 [146 P.2d 42], and *Sefton* v. *Sefton,* 45 Cal.2d 872 [291 P.2d 439].

In the Price case, wherein the wife had obtained a divorce, the property settlement agreement provided that the husband should pay alimony but such obligation should cease if the wife remarried. The wife married Bergstedt in Mexico, and obtained an annulment in California, and then sought to compel the former husband Price to pay alimony in accordance with their property settlement agreement. On appeal therein the court said, at page 467: "Regardless of the question of the right of the superior court in Los Angeles to render a judgment of nullity of the marriage contracted in Mexico in so far as it concerns plaintiff and Bergstedt, a question we consider unnecessary to decide, we are satisfied that the decree is not conclusive as to defendant in the present litigation, is not binding upon him and does not have the effect of obligating him to carry out the terms of the property settlement agreement."

In the *Estate of Gosnell, supra,* Evalou Gosnell married Ira Gosnell in July 1941, and he died in July 1942. In November 1942, she married Willey in Nevada. In March 1943, she

obtained an annulment of the Willey marriage. Thereafter she obtained an order in the matter of the Estate of Ira Gosnell for a family allowance. The children of Ira Gosnell appealed from that order. The court, in reversing the order, said at page 41: ''The decree nullifying the Las Vegas [Nevada] marriage was not conclusive as to appellants, who were not parties to the action and had no notice thereof.''

In the Sefton case, *supra,* wherein the wife had obtained a divorce, a property settlement agreement which was incorporated in the decree provided that the husband should pay alimony. In that case, the wife married Marble, and thereafter obtained an annulment on the ground of fraud, and then sought to compel the former husband Sefton to pay alimony in accordance with their property settlement. On appeal therein the court said, at pages 876 and 877: ''If Mrs. Sefton's new marriage was subject to annulment for fraud as provided for in subdivision four of section 82 of the Civil Code, or for the incapacity of her new husband . . . as provided in subdivision six, or for any reason stated in subdivisions one, three and five of that section, the marriage would be voidable only. . . . The divorced spouse, the defendant here, may never know of the circumstances which makes his former wife's new marriage voidable. . . . After the ceremony [of the new marriage] took place he could properly assume . . . that his obligation to pay alimony had ceased. He was then entitled to recommit his assets previously chargeable to alimony to other purposes. Under such circumstances it would be improper to reinstate his alimony obligation.''

Appellant argues further that the trial court in the present case should have followed the ''rule laid down'' in those cases just referred to (*Price, Gosnell,* and *Sefton*), and should not have applied the rule stated in *Pearsall* v. *Folsom,* 138 F.Supp. 939. In the Pearsall case, just referred to, the question was: When Social Security benefits ''are awarded to a claimant as the widow of wage earner, and such benefits are terminated by reason of her remarriage, is her right to benefits revived upon her procurement of an annulment of the remarriage, even though the remarriage was not void, but was voidable?'' In that case, the defendant, the Social Security Administration, contended that since it was not a party to the annulment proceeding or a party claiming under either party to the proceeding, it should not be bound by the decree in the proceeding. In support of that contention it cited section 86 of the Civil Code, and the Price and Sefton cases. In the

Pearsall case the Social Security benefits were reinstated, and it was said at pages 942 and 943: "The principle enunciated by the statute cited above [Civ. Code, § 86] is simply that a judgment of annulment shall not be conclusive as against third persons. This is demonstrated by the Price case [*Price* v. *Price, supra*]. In that case the court looked behind the judgment of annulment and declared that said judgment was granted by a local court for a cause not authorized by Civil Code, § 82, and therefore a third party (her husband of the first marriage) was not bound by said decree. In the instant case, applying the law of California, and therefore looking behind the judgment of annulment, we find that the annulment *was* granted on one of the grounds set forth under Civil Code, § 86, and therefore does not warrant complaint on the part of defendant." It was said further in that case, at page 944:

"In order to determine whether or not the Sefton case is controlling herein, one must analyze the reasoning of the California Supreme Court in arriving at its decision. The court stated [45 Cal.2d 872, 876-877 (291 P.2d 441)] that it feared that the first husband still living might be prejudiced, that he was entitled to rely upon his former wife's 'apparent marital status' and thus be free to 'recommit his assets previously chargeable to alimony to other purposes.' The court, after applying the test for determining whether the doctrine of 'relation back' appertained, concluded that it did not, because the law 'look[s] less favorably upon the more active of two innocent parties when by reason of such activity a loss is sustained as the result of the misconduct of a stranger.'

"Immediately it is apparent that the rationale of the Sefton decision is that the innocent divorced husband had the right to rely on his wife's holding herself out as 'remarried,' as otherwise his rights might be prejudiced. In the court's view no such prejudice appears in the instant case, and for this reason the Sefton case is not in point. After all, plaintiff is an innocent party who will lose rights she otherwise would have enjoyed except for a third party's misconduct. An exception should not be made to the California rule of 'relation back' so as to deprive an innocent plaintiff of Social Security benefits at least where, as here, it is clear that defendant has not been prejudiced. Plaintiff's benefits did not arise because of divorce but because of the death of her husband, Delbert Pearsall. The payments which he made into the Social Security Fund were completed at his death and in no way can be increased. Defendant has stood ready under the Social Security

Act to pay plaintiff the benefits she was entitled to as the mother of her first husband's child. Whatever funds were available for dispersal before plaintiff's attempted 'remarriage' are still available. No California case has been cited to the court wherein the word 'remarriage,' appearing in a beneficent type statute, e.g., Workmen's Compensation, has been construed.

"The courts of other jurisdictions, when considering the word 'remarriage' as used in statutes similar to the liberally construed Social Security statutes, have reinstated benefits, and have not considered voidable marriages which have been annulled ab initio as 'remarriages' within the meaning of the statutes construed. [Citations.]''

Section 183 of the Charter of the city of Los Angeles provides that whenever a member of the police department dies after retirement, an annual pension shall be paid, in equal monthly installments, to his widow during her lifetime or until she remarries.

In the present case it is to be noted that the court did not expressly state that the annulment judgment was conclusive as to appellants. It seems that there is an implication in the findings in the present case that the annulment judgment was conclusive as to appellants herein (city and board). It is to be noted, however, that the superior court file and the reporter's transcript in the annulment case were in evidence in the trial of the present case, and that the appellants herein called Mrs. Clark as a witness (under Code Civ. Proc., § 2055) and asked her questions pertaining to the grounds or basis for the annulment. Counsel for appellants asked such questions on the theory or legal principle that, under the alleged defenses, the appellants were not bound by the annulment judgment but they could "go behind" that judgment and try to prove that there was no proper factual background for an annulment. Mrs. Clark's testimony, in response to such questions by counsel for appellants, included statements to the effect that she never had sexual intercourse with Peterson, that he was impotent at the time of and since their marriage, that they never slept in the same room, and he said that he wanted to live alone. While counsel for appellants was proceeding to question Mrs. Clark, as such witness, the trial judge said: "For the record, before we go any further, Mr. Jones [who was attorney for Mrs. Clark and who had objected to the questions], all this testimony is on the claimed defense that the City can go behind the annulment in connection with

the defenses raised; now, I'm admitting that into evidence subject to a motion to strike which I will take under submission and reserve the ruling on the motion to strike this testimony when ——." Mr. Jones said: "That is my understanding, your Honor, and that is why I went ahead without further legal argument at the beginning. . . ." The judge said: "Yes. All right; but the fundamental question is whether they can go behind that and prove these facts, and I will reserve the ruling on that until I look into the authorities. Go right ahead." Thereafter counsel for appellants proceeded to ask such questions regarding the factual foundation for the annulment. No express ruling was made with reference to striking such testimony. The testimony elicited by appellants remained as evidence in the case. It thus appears that the trial court permitted appellants to "go behind" the annulment judgment and try to prove that there was insufficient factual basis for an annulment, and that Mrs. Clark obtained the annulment in bad faith and by fraud. As above shown, the trial court found in effect that no valid marriage existed between Mrs. Clark and Peterson; that she obtained the annulment in good faith and without any fraud; that the appellants (city and board) were not prejudiced by the purported marriage or by the reinstatement of the pension benefits. The annulment judgment is presumed to be valid. ██ "One of the disputable presumptions of law is that a judicial record when not conclusive does still correctly determine or set forth the rights of the parties." (*Argabrite* v. *Argabrite,* 56 Cal. App. 650, 652 [206 P. 81].) ██ Appellants herein were given an opportunity to try to rebut that presumption of validity of the annulment judgment. It is implicit in the findings that the court found that appellants did not overcome that presumption. Factual issues were presented as to the questions of good faith, fraud, and prejudice. Those factual matters were for the determination of the trial court. The evidence supports the findings as to those matters. It cannot be said as a matter of law that appellants have been prejudiced by Mrs. Clark's marriage. During the time she allegedly was married to Peterson the pension payments were not made to her, and she is not seeking payments for that period of time. The obligation of the city and board to pay a pension arose from the contractual relationship between the city and Officer Clark, and that obligation was not increased by her purported marriage to Peterson or by the annulment of that marriage. The factual situation in the present case, involving payments

from a specific fund that is maintained for the purpose of paying pensions, is distinguishable from the factual situations in such cases as the Price and Sefton cases, *supra*, which involved alimony payments from general and undesignated funds of a divorced husband. The factual situation in the present case, involving a pension fund, is similar to the factual situation in the Pearsall case, *supra*, where the fund involved was the fund of the Social Security Administration. The statements in the Pearsall case, *supra*, with respect to prejudice to the fund are applicable here.

 Appellants contend further, as above indicated, that the court erred in deciding that Mrs. Clark's causes of action for annulment were not, or are not, barred by the statute of limitations ''either as to Peterson or as to appellants.'' They argue that petitioner Mrs. Clark was required to prove anew, as against appellants, that she is entitled to an annulment judgment, and they argue further that she could not make such proof because her causes of action are barred by section 83, subdivisions 4 and 6, of the Civil Code.

 In *Brownrigg* v. *de Frees*, 196 Cal. 534, it was said at page 541 [238 P. 714] : ''It has been expressly held by this court in numerous decisions that the privilege conferred by the statute of limitations is not a right protected under the rule of public policy but is a mere personal right for the benefit of the individual which may be waived.'' In the present case the right to assert the statute of limitations as a defense to the annulment action was a personal right of Peterson. He did not appear in the annulment action, and did not assert that right. Appellants did not plead the statute of limitations as a defense with respect to the allegations to the effect that petitioner Mrs. Clark was entitled to be reinstated on the pension rolls and to be paid a pension. As above shown, the trial court found that the action for annulment was not and is not barred by the statute of limitations as to Peterson or the appellants. The evidence supports that finding.

In view of the above conclusions, it is not necessary to discuss other contentions on appeal.

The judgment is affirmed.

Fourt, J., and Lillie, J., concurred.

A petition for a rehearing was denied January 25, 1961, and appellants' petition for a hearing by the Supreme Court was denied February 21, 1961.