## Compton's Estate.

*Beneficial association—Designation of beneficiary—" Estate."*

In determining whether the beneficiary designated by a member of a beneficial association in a given case is capable of taking the fund under the charter of the association, the courts will give as broad and comprehensive a meaning as possible to the terms of the charter in which the general object of the association, and the class of persons to be benefited are set forth.

A beneficial association whose membership was confined to the employees of a particular railroad company had its object stated in its constitution and by-laws as follows : " The object of the association shall be to secure assistance to its members in case of accident, and to their fami-

28, (1904).]    Syllabus—Opinion of the Court.

lies and friends in case of death." The by-laws also provided "benefits in case of death shall be paid to the person or persons named by the member in his declaration, or in case of their death to his estate." An applicant stated the beneficiary as follows : " To my estate." At the time the application was made, and at the time of the member's death, the member's only family was a minor son, who was not living with him, but was living with the member's divorced wife. There was evidence which tended to show that the member had entered into an obligation to bear half of the expense of supporting his aged father. *Held*, that the administrator of the member, and not the guardian of the minor son, was entitled to the death benefit.

Argued Jan. 20, 1904. Appeal, No. 81, Jan. T., 1904, by Jacob Compton, from decree of O. C. Lackawanna Co., Series " C," No. 622, distributing fund in estate of Cornelius Compton, deceased. Before RICE, P. J., BEAVER, ORLADY, PORTER, MORRISON and HENDERSON, JJ. Reversed.

Exceptions to adjudication. Before SANDO, P. J.
The opinion of the Superior Court states the case.

*Error assigned* was decree awarding fund to guardian of Lorin C. Compton.

*Clarence Balentine*, with him *Charles Connell*, for appellant. —The administrator was entitled to the fund: Maneely v. Knights of Birmingham, 115 Pa. 305 ; Wolpert v. Knights of Birmingham, 2 Pa. Superior Ct. 564.

*C. A. Van Wormer*, with him *John F. Scragg*, for appellee. —The court below committed no error in awarding the fund to the guardian : Masonic Aid Assn. v. Jones, 154 Pa. 99 ; Arthars v. Baird, 8 Pa. C. C. Rep. 67 ; Kendrick's Est., 3 Pa. Dist. Rep. 402 ; Morrell's Est., 8 W. N. C. 183 ; Hodge's App., 8 W. N. C. 209 ; Zinn's Est., 14 Pa. C. C. Rep. 33 ; Fischer v. American Legion of Honor, 168 Pa. 279.

OPINION BY RICE, P. J., April 18, 1904 :
When, in 1897, Cornelius Compton, the decedent, made application to become a member of the D. L. & W. Mutual Aid Association he had a minor son, who at that time and until the death of the former, lived with his mother, the divorced wife of Compton, and her second husband. He had no other family.

Article 15 of the constitution and by-laws contains the following sections, to which reference will have to be made in this discussion : " Section 5. In case of the death of a member in good standing, either from sickness arising from natural causes or from an injury received in a manner not prescribed by these by-laws, the person or persons named in his declaration shall receive a sum equal in amount to $1.00 for each member in good standing in the association at the date of the death of said member; provided, however, that such amount shall not exceed the sum of $1,000, which amount shall be paid within sixty days from the date of receipt of notice of death by the association, which notice must be in writing, approved by at least two members of the committee on injury, and shall be accompanied by the proper proof of death. Section 6. Benefits in case of death shall be paid to the person or persons named by the member in his declaration, or in case of their death to his estate. Section 9. In case a member had not any family or relatives to become heir to the benefits arising from this association, the expenses incurred for the proper interment of his remains will be paid from the amount due said member by the trustees ; the balance, if any, shall be placed in the general fund ; provided, however, no application be made by legitimate heirs sixty days after interment, and in case such claimants should appear they must present sworn proof that they are entitled to any consideration in the premises. Any claims presented later than the limit of this article shall not be considered."

In his declaration, accompanying and forming part of his application for membership, appear the following question and answer : " To whom shall the benefits arising from your connection with this organization be paid? Name. To my estate. Related to me as          ." We infer that the words, " To my estate " are in writing and that the other words are part of the printed blank. The application was accepted and thereupon the association issued a certificate declaring Compton to be a member of the association and " entitled to all the rights and privileges in said association and entitled to all benefits arising therefrom, in accordance with and subject to the constitution and by-laws of said association. Death benefits to be paid to my estate, related to said member   , or in event

of    death before his, to    ." This awkwardness of expression, both in the application and in the certificate, is doubtless due to carelessness in filling up the printed blanks that were used, but the meaning is perfectly plain.

Compton died on July 22, 1901, and letters of administration were granted to his brother Jacob, to whom the association paid the sum demandable under the certificate of membership. Shortly before the audit of his final account the claim was made, in the form of an exception to his account, by the guardian of Lorin C. Compton, the decedent's minor son, that this fund constituted no part of the estate of the decedent and was not subject to the payment of his debts or the costs of administration. The orphans' court sustained the claim and decreed " that the administrator pay the fund received from the D. L. & W. Mutual Aid Association to the guardian of Lorin C. Compton, the son of the decedent." No question has been raised by appellant's counsel as to the appropriateness or as to the regularity of the proceedings which were chosen by the appellee for the determination of the ownership of the fund and which terminated in this decree, and we will raise none. As between the administrator of the decedent and the guardian of his minor son who was entitled to the fund? In the consideration of this question we will first briefly review the principal cases cited by the court below and the appellee's counsel in support of the guardian's claim.

In N. W. Masonic Aid Association v. Jones et al., 154 Pa. 99, the agreement, as shown by the certificate, was to pay the money " to the devisees or, if no will, to the heirs at law " of the member. —He died leaving a will by which he appointed an executor, but made no specific bequest of the benefits or specific direction as to them, and it was held that the word " heirs " did not mean " executor " or " estate " but the distributees under the intestate laws, and that the executor was not a " devisee " within the meaning of the certificate.

In Masonic Mutual Association against the same defendants, 154 Pa. 107, the agreement was to pay the money " to the legal heirs of the assured " and it was held that as he made no change in the beneficiary in the manner prescribed by the rules of the association the executor had no right to the fund.

In Fischer v. American Legion of Honor, 168 Pa. 279, the

by-laws of the association provided that "in the event of the death of all the beneficiaries selected by the member, before the death of such member, if no other or further disposition thereof be made in accordance with the provisions of these by-laws, the benefit shall be paid to the widow." A member named his wife as the beneficiary and after her death married again and subsequently died without having made any change in his certificate. It was held that the beneficiary first designated had no vested interest in the fund and therefore her administrator had no right to claim it. The grounds of the decision appear in the following quotation from Justice FELL's opinion: "It was the right of Charles F. Fischer after the death of his first wife to name a new beneficiary within the limits as to persons and classes prescribed. Upon his failure to do so the law of the association fixed the persons to be benefited. Of this law he presumably had knowledge, and his acquiescence in the selection made by it had all the effect of a new appointment by him."

In Hodge's Appeal, 8 W. N. C. 209, the by-laws of the association provided that "the premium to be paid in case of the death of any member of this company may be disposed of by his last will and testament, otherwise it shall belong to, and be paid to, his widow, and in case he shall leave no widow, then the heirs and legal representatives of the deceased." It was held that by "heirs and legal representatives" was evidently meant next of kin under the intestate laws of the commonwealth, and as the member did not exercise the power of appointment by will, the fund was payable to them and not to his administrator.

In Hunter v. Firemen's Relief and Benevolent Association, 20 Pa. Superior Ct. 605, the member did not designate a beneficiary. We held that the only contract between him and the society was that which grew out of his membership and that, giving this the interpretation most favorable to him, it was a contract to pay the death benefits to his wife and children or to such person as he should designate in the manner prescribed by the constitution.

In none of these cases was the conclusion, that the executor or administrator was not entitled to the fund, reached by overriding the contract between the association and the member,

but by a construction of it in accordance with its true intent and meaning. None of them, either directly or inferentially, decides the precise question upon which this case turns, as we understand it.

In Daniels v. Pratt, 143 Mass. 216 (10 N. E. Repr. 166), it was held that a designation of the estate as the beneficiary was invalid, but this decision was put on the ground that it was inconsistent with the statutes of Massachusetts, and so beyond the power of the parties. It is suggested in the present case that such designation is invalid under the Act of April 6, 1893, P. L. 7. But as membership in this association is confined to a certain class of employees of the D. L. & W. R. R. Co. it seems clear that the second proviso of section 4 exempts the association from the provisions of the act. Therefore the case is plainly distinguishable from Daniels v. Pratt.

Nor is the case of Fodell v. Miller, 193 Pa. 570, pertinent. For there the certificate was issued in consideration of the representations and declarations made to the association in the application therefor, and the decision was put on the ground that these were false and fraudulent, as the following quotation from Justice McCollum's opinion will show : " As the application was made a part of the contract, and the material representation contained therein was obviously without foundation and fraudulent, it is clear that the purpose of the party insured was to conceal from the insurer the real nature of the transaction in the belief or apprehension that a frank disclosure of it would result in a refusal of the latter to sanction it." There is nothing of that kind in this case. So far as the testimony shows there was no misrepresentation and no concealment of any material fact.

If we are to be guided by the intention of the parties, as evidenced by the application and the certificate of membership, in determining the question before us, there is no room for doubt that the fund was demandable by, and properly paid to, the administrator, and constitutes a part of Cornelius Compton's estate. The money went where he intended and the company assented that it should go when he was received into membership, and nothing occurred after that time from which a different intention can be inferred, or which, regardless of that intention, can affect the original designation of the bene-

ficiary in any way. There are no facts which tend to show
that he would have sought membership in the association upon
any other terms, and to warrant an interpretation of the con-
stitution and by-laws which will result in diverting the fund
in a different direction from that intended by the parties to
the contract, the meaning of the words interpreted should be
clear and free from reasonable doubt. See Folmer's Appeal,
87 Pa. 133.

But it is argued that the designation made by Cornelius
Compton and assented to by the association was in contraven-
tion of section nine of article fifteen of the by-laws, and there-
fore null and void. This, it seems to us, is giving a broader
effect to this section than it is entitled to, as a single illustra-
tion will show. Suppose he had designated a dependent friend
who, though having an insurable interest in his life, was
neither a blood relation nor a member of his family, and the
association assented thereto, and upon his death paid the money
to such person, could it be successfully contended that this
section would give his "legitimate heirs" the right to question
the validity of the contract or the propriety of the payment?
We think not. The section, as it seems to us, was not in-
tended to restrict the member and the association in the choice
of the beneficiary but was intended rather to apply where none
was chosen. Moreover, the section expressly declares that to
entitle an heir, as such, to consideration by the association he
must present his claim within a certain time, and it does not
appear that this was done. It is difficult to see what standing
the appellee has to question the payment to the administrator.

The remaining question—and upon this the case turns—is
whether the designation was void because inconsistent with
the object of the association as thus stated in article 2 of the
constitution and by-laws: "The object of the association shall
be to secure assistance to its members in case of accident and
to their families and friends in case of death." In determining
whether the beneficiary designated by the member in a given
case is capable of taking the fund under the charter of the as-
sociation the courts will give as broad and comprehensive a
meaning as possible to the terms of the charter in which the
general object of the association and the class of persons to be
benefited are set forth: Niblack on Benefit Associations, sec-

tion 160.  This principle was recognized and applied by our own Supreme Court in Maneely v. Knights of Birmingham, 115 Pa. 305.  There, the claim of the member's sister, as against that of his widow and children, was sustained under the following circumstances : The charter as well as the constitution of the corporation set forth its purpose to be "the maintenance of a society for the purpose of benefiting and aiding the widows and orphans of deceased members."  One of the by-laws provided that a certain sum should be paid "to such person or persons as the deceased might have designated to receive the same on the books of the lodge of which he is a member."  The member borrowed the amount of money which the corporation would be liable to pay at his death from his sister, who also paid his dues, and designated her on the books of the lodge as the person to whom payment should be made by the corporation.  It was held, reversing the court below, that the money must be paid to her.  Mr. Justice GREEN who delivered the opinion of the court, after quoting the foregoing provision of the charter, said : "Construing these words, the learned court below held that it was not within the power of the defendant to stipulate for the payment of the benefits to any person, other than the widow and orphans, who might be designated as the recipient by the deceased under article nineteenth of the constitution.  We think this is too narrow and strained a view to take of the second section of the charter above quoted.  While it is true that the general purpose of the corporation is there stated to be the maintenance of a society for benefiting and aiding widows and orphans of deceased members, it must be observed that this is only the statement of a general purpose.  It is only the recital of an object sought to be accomplished, and which doubtless is accomplished in the great majority of cases, even though in exceptional cases, the benefits may, by special contract, be paid to other persons than the widow or orphans.  There is no prohibitory or restrictive language excluding from the powers of the corporation the right to contract specially with the member for the payment of benefits to other persons than his widow and orphans.  Nor is such a contract to be held void by reason of any necessary implication from the language of the charter."  Then, after giving many illustrations to show how the widow

and orphans may be benefited by a contract designating another beneficiary, he concluded: " Many more illustrations of a similar character might easily be suggested, but it is unnecessary. They all prove the same proposition, to wit: that it is entirely possible to benefit the widow or orphans by means of such a membership, though neither of them is the designated beneficiary, and hence there is no necessary conflict between the second section of the charter and the nineteenth article of the constitution." So here, there was evidence tending to show that Cornelius Compton had entered into an obligation to bear half the expense of supporting his aged father. Whether this alleged obligation was the consideration which moved him or not is of course a matter of pure conjecture, and we express no opinion as to the validity of the claim growing out of it. It is proper, however, to refer to it by way of illustration, for the purpose of showing that in contracting that the money should become part of his estate he may have had an object in view, the carrying out of which would be in entire harmony with the general purposes of the association. The case of Maneely v. Knights of Birmingham was followed by us in Menovsky v. Menovsky, 19 Pa. Superior Ct. 427, and Donithen v. I. O. of Foresters, 23 Pa. Superior Ct. 442, and seems to be decisive of the question upon which this case turns. Without further elaboration we conclude that there is no clearly prohibitory or restrictive language in the constitution and by-laws of this association, and no such necessary conflict between section five of article fifteen and section nine of the same article, or between section five and article two, as ought to prevent the contract from being carried out as it was made; therefore the fund in question is part of the estate of the decedent and distributable as such.

Decree reversed at the cost of appellee and record remitted with a procedendo.