Boyle, Appellant, *v.* Philadelphia Police Widows' Pension Fund Association.

Argued March 23, 1971. Before WRIGHT, P. J., WATKINS, MONTGOMERY, JACOBS, HOFFMAN, SPAULDING. and CERCONE, JJ.

232

*David I. Grunfeld,* with him *Steinberg, Greenstein, Richman & Price,* for appellant.

*John Ryan,* for appellee.

OPINION BY CERCONE, J., June 22, 1971:

This appeal is presented to us on an agreed statement of facts as follows

Frank A. Boyle was, at the time of his death on January 26, 1954, a member of the Philadelphia Police Department and a member in good standing of the Philadelphia Police Widows' Pension Fund Association, a non-profit corporation. During his lifetime he had designated his wife as beneficiary of the benefits payable from the Fund in the event he pre-deceased her. The plaintiff, Katherine L. Boyle, having established herself as the widow of Frank A. Boyle, began receiving her monthly benefits in February, 1954. Those monthly payments continued until her marriage to one Lawrence Benjamin McCoy at Hayward, California, on September 17, 1967, at which time the payments were properly terminated.

However, on February 5, 1969, on plaintiff's application, her marriage to Lawrence McCoy was annulled by decree of the Superior Court for the State of Cali-

fornia, County of Alameda, on the ground of fraud.[1] The decree also upheld as binding a property settlement agreement entered into between plaintiff and McCoy on June 4, 1968, and, in addition, restored to plaintiff her first marriage name, Katherine Lee Boyle.

After the entry of the decree annulling her marriage to McCoy, plaintiff sought the resumption of the pension payments due her as the widow of Frank A. Boyle. The Association, however, denied her right to such further payment, relying on Article IV, Section 1 of the By-Laws of the Association providing that "She (the widow) shall receive said pension during her natural life *or until she remarries*". This suit followed, raising the question: Did the decree of annulment render the remarriage null and void so as to restore the plaintiff to her rights as widow of her first husband. The court below held it did not, relying on the decision of the California Supreme Court in *Sefton v. Sefton*, 45 Cal. 2d 872, 291 P. 2d 439 (1955),[2] wherein the court denied the wife the right to a resumption of alimony payments from her first husband after her intervening marriage had been declared null and void.

It is our determination in this appeal by plaintiff that the court below erred in applying the ruling of *Sefton v. Sefton*, supra, for the basis of that decision was, "The divorced spouse, the defendant here, may never know of the circumstances which make his former wife's new marriage voidable . . . After the ceremony [of the new marriage] took place he could properly assume . . . that his obligation to pay alimony had ceased. He was then entitled to recommit his assets previously chargeable to alimony to other purposes. Under such circumstances it would be improper to reinstate his

---

[1] The decree stated: "1. That the marriage between plaintiff and defendant is annulled;".

[2] It is conceded by the parties that California law governs the determination of the issue presented here.

alimony obligation." (45 Cal. 2d at 876-877, 291 P. 2d at 442) This same reasoning was involved in the decisions of *Price v. Price,* 24 Cal. App. 2d 462, 75 P. 2d 655, and *Estate of Gosnell,* 63 Cal. App. 2d 38, 146 P. 2d 42, cases in which the wife was, as in the *Sefton* case, suing the first husband or his estate.

A different result has been reached, however, where the courts have had before them, as here, the case of a plaintiff suing, not her first husband nor his estate, but a third party whose rights were not in any way affected by any reliance on the remarriage and who is merely called upon to continue payments which would have accrued but for the subsequent marriage which now has been declared annulled. In *Pearsall v. Folsom,* 138 F. Supp. 939 (1956), the United States District Court for the Northern District of California reinstated a widow's rights to Social Security payments following the annulment of her remarriage. The court in that case refused to apply the *Sefton* decision, supra, distinguishing it as follows: "In order to determine whether or not the Sefton case is controlling herein, one must analyze the reasoning of the California Supreme Court in arriving at its decision. The court stated [45 Cal. 2d 895, 291 P. 2d 441] that it feared that the first husband still living might be prejudiced, that he was entitled to rely upon his former wife's 'apparent marital status' and thus be free to 'recommit his assets previously chargeable to alimony to other purposes'. The court, after applying the test for determining whether the doctrine of 'relation back' appertained, concluded that it did not, because the law 'look[s] less favorably upon the more active of two innocent parties when by reason of such activity a loss is sustained as the result of the misconduct of a stranger.'

"Immediately it is apparent that the rationale of the Sefton decision is that the innocent divorced husband had the right to rely on his wife's holding herself

out as 'remarried', as otherwise his rights might be prejudiced. In the court's view no such prejudice appears in the instant case, and for this reason the Sefton case is not in point. After all, plaintiff is an innocent party who will lose rights she otherwise would have enjoyed except for a third party's misconduct. An exception should not be made to the California rule of 'relation back' so as to deprive an innocent plaintiff of Social Security benefits at least where, as here, it is clear that defendant has not been prejudiced. Plaintiff's benefits did not arise because of divorce but because of the death of her husband, Delbert Pearsall. The payments which he made into the Social Security Fund were completed at his death and in no way can be increased. Defendant has stood ready under the Social Security Act to pay plaintiff the benefits she was entitled to as the mother of her first husband's child. Whatever funds were available for dispersal before plaintiff's attempted 'remarriage' are still available."

It is this reasoning which is clearly applicable here. The Association was in no way prejudiced by plaintiff's remarriage. It did not in any way change its position in reliance on that remarriage. The fund which was available for the payment of plaintiff's benefits was in no way altered thereby. The fact situation here presented is governed by *Pearsall v. Folsom*, supra, and not by *Sefton v. Sefton,* supra. This is clearly indicated by the California District Court of Appeal, Second District, Division 1, in two of its decisions, namely: *Cottam v. City of Los Angeles,* 184 Cal. App. 2d 523, 7 Cal. Reporter 734 (1960) and *Clark v. City of Los Angeles,* 187 Cal. App. 2d 792, 9 Cal. Reporter 913 (1960).

In the *Clark* case, the widow of a police lieutenant was receiving widow pension payments from the fire and police pension fund of the City of Los Angeles. Payments ceased upon her remarriage, which remarri-

age was subsequently annulled on the ground of fraud, the decree stating the said subsequent marriage "be and the same is hereby annulled . . ." Thereupon, the widow sought resumption of the pension payments to her, but the City refused. The appellate court affirmed the lower court's holding in favor of the widow, distinguishing the *Sefton*, *Price* and *Gosnell* cases, supra, and following *Pearsall v. Folsom*, supra: "It cannot be said as a matter of law that appellants have been prejudiced by Mrs. Clark's marriage. During the time she allegedly was married to Peterson the pension payments were not made to her, and she is not seeking payments for that period of time. The obligation of the city and board to pay a pension arose from the contractual relationship between the city and Officer Clark, and that obligation was not increased by her purported marriage to Peterson or by the annulment of that marriage. The factual situation in the present case, involving payments from a specific fund that is maintained for the purpose of paying pensions, is distinguishable from the factual situations in such cases as the Price and Sefton cases, supra, which involved alimony payments from general and undesignated funds of a divorced husband. The factual situation in the present case, involving a pension fund, is similar to the factual situation in the Pearsall case, supra, where the fund involved was the fund of the Social Security Administration. The statements in the Pearsall case, supra, with respect to prejudice to the fund are applicable here."

In the *Cottam* case, the same California court held the *Sefton*, *Price* and *Gosnell* cases inapplicable and also followed *Pearsall v. Folsom*, stating: "The federal district court in Pearsall v. Folsom, 138 F. Supp. 939 gave careful consideration to the problem here presented as it applied to a widow seeking restoration of rights under the Social Security Act after the annul-

ment of a subsequent marriage and decreed such restoration.

"It pointed out that the plaintiff (like the widow in the case now before us) was an innocent party who would lose rights she otherwise would have enjoyed except for a third party's misconduct."

The California court in that case noted the same argument made by the defendant and the lower court in this case that Section 86 of the California Civil Code provides: "A judgment of nullity of marriage rendered is conclusive only as against the parties to the action and those claiming under them." It held, however, "the annulment judgment is presumed to be valid. 'One of the [in]disputable presumptions of law is that a judicial record when not conclusive does still correctly determine or set forth the rights of the parties.' Argabrite v. Argabrite, 56 Cal. App. 650, 652, 206 P. 81, 82. Appellants herein were given an opportunity to try to rebut that presumption of validity of the annulment judgment. It is implicit in the findings that the court found that appellants did not overcome that presumption."

In the instant case, presented on an agreed statement of facts, defendant did not allege any invalidity of the annulment decree. Therefore, we must presume it to be valid and correctly determinative of the rights of the parties. As stated in the *Cottam* case, supra: ". . . it is apparent that the controversy on this appeal does not center around the sufficiency of the facts or law to support the annulment decree. Although that decree was not conclusive as against defendant city, it was clearly effective against it in this case."

Defendant argues, however, that, unlike *Pearsall v. Folsom,* plaintiff in the instant case is not an innocent party because she secured a property settlement from Mr. McCoy which was made a part of the annulment proceedings. Defendant states: "Under the Agreement,

substantial assets are turned over by the second husband to the Appellant. These apparently have been retained by Appellant as part of the fruits of her second marriage". We cannot, however, conjecture as to the truth of this last observation by defendant, nor is such conjecture necessary. It is a sufficient answer to note that the court did not find plaintiff's right to an annulment in any way affected by the property settlement; in fact, it made the agreement part of the decree. There is no incongruity in plaintiff receiving a property settlement from a defendant whom she charges made fraudulent representations on the basis of which she was falsely induced into marriage. Receipt of such property settlement is consistent with her being an innocent and injured spouse and with her claim of fraud. We find no reason for holding that the property settlement deprived plaintiff of the right to which the decree of annulment otherwise entitled her, namely, the reinstatement of her rights to the police pension payments as widow of Frank A. Boyle.

We cannot make the distinction, as requested by defendant, between a decree merely annulling the marriage and one which expressly declares the marriage to be null and void ab initio. The *Pearsall v. Folsom* decision did not turn on the language of the decree of annulment, and the *Clark* and *Cottam* cases, which followed the *Pearsall v. Folsom* decision, made no such distinction. In fact, the court in the *Clark* opinion quoted the decree there involved and its language was the same as that in the case now before us. Under California law, the decree of annulment establishes that no valid marriage ever existed, as clearly stated by the California Supreme Court in *McDonald v. McDonald,* 6 Cal. 2d 457 at 460, 461, 58 P. 2d 163, at 164, 165 (1936) : "Appellant's argument overlooks the nature of an annulment proceeding. A marriage cannot be annulled unless there was something legally wrong with it

in its inception. Under the very language of Section 82 of the Civil Code, an annulment is granted for causes 'existing at the time of the marriage!' ... '... an annulment proceeding is maintained upon the theory that, for some cause existing at the time of marriage, no valid marriage ever existed. This is true even though the marriage be only voidable at the instance of the injured party, or, ... capable of being annulled.' And the decree of nullity in such a proceeding determines that no valid marriage ever existed." We see no reason in the case now before us for not giving the annulment decree the full effect of the law, the defendant not being a third party who has been injured by reliance on the remarriage or who has been prejudiced thereby so as to make the reestablishment of plaintiff's pension rights inequitable.

It is our opinion, therefore, that under the agreed statement of the facts, plaintiff is entitled to a resumption of the pension benefits as of the date of the decree of annulment. In coming to this decision, we bear in mind what was noted by the California Court in the *Cottam* case, "pension legislation must be liberally construed and applied to the end that the beneficent results of such legislation may be achieved." We can see no distinction, as regards the result of this case, between a pension received by legislative fiat and one, such as here, received by virtue of the by-laws of a non-profit organization such as the Philadelphia Police Widows' Pension Fund Association. The same liberal rules of interpretation apply. This court in *Neff v. Haggerty*, 99 Pa. Superior Ct. 315 (1930), a case involving the Police Pension Fund Association of the City of Pittsburgh, specifically stated: "In determining whether the beneficiary designated by the member in a given case is capable of taking the fund under the charter of the association the courts will give as broad and comprehensive a meaning as possible to the terms

of the charter in which the general object of the association and the class of persons to be benefitted are set forth: Compton's Estate, 25 Pa. Superior Ct. 28, 34." We hold, therefore, that the court below erred in relying on the *Sefton* case, and in failing to apply the decisions in *Pearsall v. Folsom*, supra, and the *Clark* and *Cottam* cases, supra. On the agreed statement of the facts, plaintiff was entitled to a judgment on the pleadings under Rule 1035 of the Pennsylvania Rules of Civil Procedure. The refusal of the court below to grant a judgment on the pleadings in this action of assumpsit was properly appealable to this court under the Act of April 18, 1874, P. L. 64, §1, 12 P.S. §1097, as stated in *Ross v. Metropolitan Life Ins. Co.,* 403 Pa. 135, at 137 (1961): "In order to avoid any possible future misunderstanding, we note that the Order of the lower Court which overruled plaintiff's motion for judgment on the pleadings, although interlocutory, is appealable under the Act of April 18, 1874, . . . as analogous to a motion for judgment for want of a sufficient affidavit of defense. Syme v. Bankers National Life Insurance Co., 393 Pa. 600, 144 A. 2d 845."

The facts agreed upon clearly sustaining plaintiff's right to recovery, she was entitled to the judgment asked.

The order of the court below is reversed, with instructions to enter judgment for the plaintiff.