OPINION OF THE COURT
Andrew R. Tyler, J.
This is an article 78 proceeding seeking an order compelling the New York City Employees’ Retirement System (NYCERS) to terminate payments of accidental death benefits to the plaintiff’s infant son, respondent John M. Skagen, Jr., and to reinstate such payments to her. Petitioner is the widow of a former transit police officer (and member of the NYCERS) who died in a line-of-duty accidental injury in June, 1972.
Respondent, NYCERS, seeks dismissal of the petition on the grounds that it properly and lawfully made payments, and continues to make payments, of accidental death benefits to John M. Skagen, Jr., as the son of plaintiff and the deceased, from July 2, 1977 to the present.
In 1974 the board of trustees of the NYCERS passed a resolution awarding petitioner accidental death benefits pursuant to section B3-33.0 of the Administrative Code of the City of New York. The resolution of the board stated in part that the NYCERS would pay petitioner, throughout her widowhood, $4,535.38 per annum from June 29, 1972 to September 19, 1986, and $5,161.09 per annum from September 20, 1986. Upon her death or remarriage pay *449 ments would be continued to the son of the deceased, John M. Skagen, Jr., until he dies or attains the age of 18 years of age, whichever occurs first.
Petitioner remarried on or about July 2, 1977, after receiving payments from June 29, 1972 through July, 1977. NYCEES informed petitioner that since she was not entitled to receive accidental death benefit payments beyond July 1, 1977, the last day of her widowhood, she was required to return the July, 1977 check previously remitted. NYCEES further informed petitioner that payments would be made to her son, John M. Skagen, Jr., as of July 2, 1977, and requested that a guardian be appointed for the minor to receive these payments. Petitioner returned the July, 1977 check to NYCEES in August, 1977, and on August 12,1977 she was appointed guardian of the person and property of John M. Skagen, Jr., by Surrogate’s Court, County of Bronx.
By resolution dated June 9, 1978, the board of trustees stated that the NYCEES would pay to petitioner, as guardian of and in behalf of John M. Skagen, Jr., accidental death benefits in the sum of $4,535.38 per annum through July 1, 1979, and then $5,434.84 per annum as of July 2, 1979 through September 19, 1986, in equal monthly installments, at which time John M. Skagen, Jr., would attain 18 years of age, and they would cease earlier in the event of his death while under 18 years of age.
Petitioner’s remarriage was annulled on April 25, 1979, pursuant to subdivision (e) of section 140 of the Domestic Eelations Law. She was informed by NYCEES in response to her inquiry, that the annulment of her marriage did not revive her entitlement to said benefits, and that payment of said benefits would continue to be made to her minor son.
The issue before me in this article 78 proceeding is whether the annulment of her second marriage effectively revived her entitlement. A related and critical question concerns the rights of her son. Section B3-33.0 of the Administrative Code is explicit in its provision that a member’s death benefits be paid “[t]o his widow, to continue during her widowhood”. It is equally explicit regard *450 ing payment of those same benefits to minor children of the deceased “if the widow dies or remarries before any child of such deceased member shall have attained the age of eighteen years”.
The annulment of petitioner’s marriage is a declaration that the “marriage is void from the time its nullity is declared by a court of competent jurisdiction”. (Domestic Relations Law, § 7.)
However, section 7 of the Domestic Relations Law would be a superfluous statute if its sole meaning were to establish that the marriage is void only from the time of a declaration by the court to that effect. The same is true of the effect of any court decree.
When a marriage has been procured by fraud, it is merely voidable, subject to appropriate action by the defrauded party. Once annulled by the court for fraud, however, that marriage is deemed erased as if it never took place. In that respect it is very much unlike a divorce, which serves to legally terminate a marriage deemed to have validly existed. (Sleicher v Sleicher, 251 NY 366; Saunders v Saunders, 63 NYS2d 880; Metcalfe v Cutler, 52 NYS2d 71, affd 269 App Div 655.)
As stated in Saunders (supra, at p 882): “The court of appeals has held that a marriage procured by fraud is voidable not void. Even so, annulment when decreed, puts an end to it from the beginning *** The judgment of annulment granted herein reverts back to the very inception of the marriage and renders the marriage contract and its incidental obligations void from the beginning. The annulment destroys the marriage from the beginning as a source of rights and duties *** Notwithstanding the express provision of the statute that a voidable marriage is void from the time its nullity is declared, the courts hold that an annulment of a voidable marriage puts an end to it from the beginning. The intent of the statute, according to the court of appeals, was not to alter the rule that when the decree was pronounced the marriage was void ab initio, but was merely to require the concurrence of the court before the parties could treat themselves as free from the contract.”
*451 It is a general rule that an annulment of a widow’s remarriage restores her to the pension rights held by her as the widow of the first husband prior to remarriage (85 ALR2d 242). No direct case in point has been found in New York on the subject. Matter ofGiraldi v Trustees ofBd. of Police Pension Fund (NYLJ, Feb. 4, 1980, p 6, col 4), although it involves a claim for accidental death benefits by a New York City police officer’s widow, is distinguishable in that the second husband died shortly after the marriage. However, several cases in Pennsylvania and California support this court’s position that petitioner is entitled to resumption of pension payments from the NYCERS (Boyle v Philadelphia Police Widows’ Pension Fund Assn., 219 Pa Super 230; Clark v City of Los Angeles, 187 Cal App 2d 792; Cottam v City of Los Angeles, 184 Cal App 2d 523). The rationale behind such decisions is basically that (1) the widow is an innocent party who would lose rights she would otherwise have enjoyed but for the conduct of a third party (in this case petitioner’s second husband); (2) the pension system or fund has not been prejudiced; (3) the annulment decree is valid, and (4) “pension legislation must be liberally construed and applied to the end that the beneficient results of much legislation may be achieved.” While it is true that the case at bar involves an accidental death benefit, this court sees no distinction since the award arises out of a line-of-duty injury akin to a disability pension.
There is no doubt that on a pure economic basis the petitioner and her son will be in a better financial position if the benefits are based on her life expectancy and do not cease when her son reaches 18. The guardian ad litem has stated that the infant (age 11) prefers that his mother be reinstated as recipient so as to be able to continue to support him until age 21, which is her obligation under subdivision 3 of section 32 of the Domestic Relations Law. This, coupled with the fact that the judgment of annulment contains no provision for support for petitioner or her son, and upon the rationale contained in the afore-mentioned cases, convinces me that it is in the best interest of both the child and his mother that petitioner be reinstated as beneficiary.
*452 Accordingly, this court determines that once the nullity of the remarriage was declared, petitioner again became a widow entitled to the benefits as a widow within the intent of the statute, and she is entitled to restoration of the pension benefits as of the date of the declaration of nullity. (Matter of Nakoneczna v I & L Eisenberg, 60 AD2d 403; Matter of Foster v American Radiator Co., 249 App Div 460.)
The application of the guardian ad litem for a fee shall be considered in the judgment to be settled hereon.