600 S.E.2d 251

BOARD OF TRUSTEES OF THE FIREMEN'S PENSION AND RELIEF FUND OF THE CITY OF ST. ALBANS, Plaintiff Below, Appellee,

v.

Wilma J. DAVIS (formerly Wilma Davis Fulmer), Defendant Below, Appellant.

No. 31625.

Supreme Court of Appeals of West Virginia.

Submitted: April 28, 2004.

Filed: June 25, 2004.

John F. Dascoli, Esq., The Segal Law Firm, Charleston, for Appellee.

Harold S. Albertson, Esq., Albertson & Jones, Charleston, for Appellant.

STARCHER, J.

In this appeal from the Circuit Court of Kanawha County, we are asked to examine an order requiring the surviving spouse of a deceased firefighter to repay certain pension benefits which she received from the firefighter's pension fund. The circuit court ruled that the surviving spouse's remarriage following the death of the firefighter forever terminated her right to receive those pension benefits, and concluded, as a matter of law, that the later annulment of the remarriage had no legal effect on the surviving spouse's right to receive pension benefits.

As set forth below, we reverse the circuit court's order.

## I.

### Facts & Background

Gene Fulmer was a firefighter employed by the City of St. Albans. Mr. Fulmer was married to the appellant, Wilma J. Davis, and after his December 1988 retirement received pension benefits from the Firemen's Pension and Relief Fund of the City of St. Albans ("the Fund"), administered by the appellee Board of Trustees. Mr. Fulmer died and in March 1995 the appellant began receiving her own pension benefits from the Fund as the surviving spouse of a deceased firefighter.

On April 25, 1997, the appellant married Kenneth Maxwell, a West Virginia resident, in Sumter County, Florida. Apparently unbeknownst to the appellant was a statutory provision that would terminate her right to survivor benefits from the Fund upon her "remarriage." *See* *W.Va.Code*, 8–22–

26(a)(2).[1] The appellant therefore did not notify the appellee Board of Trustees of her marriage to Mr. Maxwell, and continued to receive benefits until November 19, 1999. On that date, the Board of Trustees notified the appellant that her benefits were terminated as a result of her remarriage. The Board of Trustees also demanded that the appellant repay all benefits she received after April 25, 1997, an amount the Board of Trustees calculated at $40,470.58.

1. The appellee concedes that the letter notifying the appellant of her survivor's benefits makes no mention of the provisions of *W.Va.Code*, 8–22–26(a)(2) [1991]. That statute states:

    (a) In case: ...

    (2) Any former member of any such department who is on a disability pension prior to the first day of July, one thousand nine hundred eighty-one, under section twenty-four of this article, or after the thirtieth day of June, one thousand nine hundred eighty-one, under sections twenty-three-a and twenty-four of this article, or is receiving or is entitled to receive retirement pension benefits under the provisions of subsection (a) or both subsections (a) and (b), section twenty-five of this article, dies from any cause other than as specified in subsection (b) of this section leaving in either case surviving a spouse or any dependent child or children under the age of eighteen years or dependent father or mother or both, or any dependent brothers or sisters or both under the age of eighteen years, or any dependent child over the age of eighteen years of age who is totally physically or mentally disabled so long as such condition exists; then in any of the cases set forth above in (1) and (2) the board of trustees of such pension and relief fund shall, immediately following the death of such member, pay to or for each of such entitled surviving dependents the following pension benefits: To such spouse, until death or remarriage, a sum per month equal to sixty percent of such member's pension or, in the event such member was not receiving a pension at the time of his death, sum per month equal to sixty percent of the monthly retirement pension such member would have been entitled to receive pursuant to section twenty-five of this article on the date of his death if such member had then been eligible for a retirement pension thereunder, or the sum of three hundred dollars per month, whichever is greater; to each such dependent child, a sum per month equal to twenty percent of such member's pension or, in the event such member was not receiving a pension on the date of his death, a sum per month equal to twenty percent of the monthly retirement pension such member would have been entitled to receive pursuant to section twenty-five of this article on the date of his death if such member had then been

On December 4, 2000, a circuit judge in Sumter County, Florida entered an order granting a "Final Judgment of Annulment" to the appellant and Mr. Maxwell. The judgment order declared that the "purported marriage between the parties on April 25, 1997, is null and void." The appellant sought the annulment on the ground that Mr. Maxwell, from the time of the marriage to the judgment date, was impotent.

eligible for a retirement pension thereunder, or until such child attains the age of eighteen years or marries, whichever first occurs; to each such dependent orphaned child, a sum per month equal to twenty-five percent of such member's pension or, in the event such member was not receiving a pension at the time of his death, a sum per month equal to twenty-five percent of the monthly retirement pension such member would have been entitled to receive pursuant to section twenty-five of this article on the date of his death if such member had then been eligible for a retirement pension thereunder, until such child attains the age of eighteen years or marries, whichever first occurs; to each such dependent orphaned child, a sum per month equal to twenty-five percent of such member's pension or, in the event such member was not receiving a pension on the date of his death, a sum per month equal to twenty-five percent of the monthly retirement pension such member would have been entitled to receive pursuant to section twenty-five of this article on the date of his death if such member had then been eligible for a retirement pension thereunder, until such child attains the age of eighteen years or marries, whichever first occurs; to each such dependent father or mother, a sum per month for each equal to ten percent of such member's pension or, in the event such member was not receiving a pension on the date of his death, a sum per month equal to ten percent of the monthly retirement pension such member would have been entitled to receive pursuant to section twenty-five of this article on the date of his death if such member had then been eligible for a retirement pension thereunder; . to each such dependent brother or sister, the sum of fifty dollars per month until such individual attains the age of eighteen years or marries, whichever first occurs, but in no event shall the aggregate amount paid to such brothers and sisters exceed one hundred dollars per month. If at any time, because of the number of dependents, all such dependents cannot be paid in full as herein provided, then each dependent shall receive his pro rata share of such payments. In no case shall the payments to the surviving spouse and children be cut below sixty-five percent of the total amount paid to all dependents.

The appellee Board of Trustees initiated the instant lawsuit to compel the appellant to repay all pension benefits she received from the Fund after her marriage in April 1997. The appellee also sought prejudgment interest, attorney fees, and the costs of prosecuting the lawsuit. After conducting discovery, both parties filed motions for summary judgment.

On February 28, 2003, the circuit court granted summary judgment to the Board of Trustees, and denied the appellant's motion for summary judgment. The circuit court held that *W.Va.Code*, 8–22–26(a)(2) "states that survivor benefits will cease upon 'death or remarriage,' " and that "[t]here is no provision in said statute for the reinstatement of benefits after the attainment of an annulment, regardless of whether Mr. Maxwell's impotency rendered the marriage voidable or void ab initio." The circuit court therefore required the appellant to reimburse the Fund for all pension benefits she received after April 1997, plus prejudgment interest, but denied the appellee recovery of its attorney fees and costs.

The appellant now appeals the circuit court's February 28, 2003 summary judgment order.

## II.

### *Standard of Review*

■ We review the circuit court's grant of summary judgment *de novo*. *See* Syllabus Point 1, *Painter v. Peavy*, 192 W.Va. 189, 451 S.E.2d 755 (1994). Furthermore, when the issue on appeal from the circuit court is clearly a question of law or involving an interpretation of a statute, we also apply a *de novo* standard of review. Syllabus Point 1, *Chrystal R.M. v. Charlie A.L.*, 194 W.Va. 138, 459 S.E.2d 415 (1995). With these standards in mind, we examine the arguments of the parties.

## III.

### *Discussion*

■ The appellant argues that the circuit court erred as a matter of law by failing to give any effect to her December 2000 annul-ment. She points out that, as this Court once stated, " 'Annulment renders a marriage void ab initio[.]' Once a marriage is annulled it is declared invalid from the outset or treated as if it never existed." *State ex rel. Dept. of Health and Human Resources v. Farmer*, 206 W.Va. 249, 254, 523 S.E.2d 840, 845 (1999) (*quoting* 55 C.J.S. Marriage § 63, p. 634). She asserts that when the order of annulment was entered in Sumter County, Florida, her 1997 marriage to Mr. Maxwell ceased to exist as a matter of law and should have been treated by the circuit court as if it never existed. We agree.

It appears to be the near-unanimous rule in most courts that when the right of a widow (or widower) to pension benefits has been terminated by a remarriage, and the remarriage has been subsequently annulled, the pension rights held prior to the remarriage should be restored, the reasoning being that an annulment renders the remarriage void *ab initio*. *See* "Effect of Divorce, Remarriage, or Annulment, on Widow's Pension or Bonus Rights or Social Security Benefits," 85 A.L.R.2d 242, § 4 (1962). *See also*, A. Larson and L. Larson, 5 *Larson's Worker's Compensation Law* § 98.04[3] (2004) (stating that the general rule as to workers' compensation benefits is that, "[w]hen a widow remarries, and the marriage is later annulled . . . the widow has been allowed to resume receipt of dependency benefits[.]").

For example, in a case similar to the instant case, *Boyle v. Philadelphia Police Widows Pension Fund Ass'n*, 219 Pa.Super. 230, 280 A.2d 577 (1971), the widow of a police officer received pension benefits from 1954 until she remarried in 1967, and the benefits were terminated. In 1969, the widow's remarriage was annulled on the ground of fraud and she sued seeking the resumption of the pension payments due to her as a widow. A lower court refused to order a resumption of the pension payments, but on appeal the decision was reversed, the court noting that the pension fund "was in no way prejudiced by plaintiff's remarriage. It did not in any way change its position in reliance on that remarriage. The fund which was available for the payment of plaintiff's benefits was in no way altered thereby." 219 Pa.Super. at

235, 280 A.2d at 579. The Pennsylvania court went on to hold that it could find "no reason in the case now before us for not giving the annulment decree the full effect of the law," 219 Pa.Super. at 239, 280 A.2d at 581, and concluded that the widow was clearly entitled to a judgment to recover her pension benefits.

Likewise, in *Skagen v. New York City Employees' Retirement System,* 108 Misc.2d 448, 437 N.Y.S.2d 497 (1981), the plaintiff was the widow of a transit police officer who died in a line-of-duty accident in 1972. She began receiving accidental death benefits from the employee's retirement system, and received those benefits until she remarried in 1977. The marriage was annulled in 1979, but when the employee's retirement system refused to reinstate her benefits, the widow brought suit. The court stated that when a marriage is annulled, "that marriage is deemed erased as if it never took place." 108 Misc.2d at 450, 437 N.Y.S.2d at 498. The court found that "[i]t is a general rule that an annulment of a widow's remarriage restores her to the pension rights held by her as the widow of the first husband prior to remarriage," 108 Misc.2d at 451, 437 N.Y.S.2d at 499, and went on to state the rationale behind this rule:

> The rationale behind such decisions is basically that (1) the widow is an innocent party who would lose rights she would otherwise have enjoyed but for the conduct of a third party (in this case petitioner's second husband); (2) the pension system or fund has not been prejudiced, (3) the annulment decree is valid, and (4) "pension legislation must be liberally construed and applied to the end that the beneficent results of such legislation may be achieved."

*Id.* The court concluded that once the nullity of the remarriage was declared, petitioner again became a widow entitled to the benefits of a widow, and therefore ordered the reinstatement of her benefits. *See also, Stubbs v. Metropolitan Life Ins. Co.,* 653 F.Supp. 299 (S.D.Tex.1986) (annulment of widow's remarriage restored the pension rights held by her as widow of her first husband, who died while employed in private industry); *Clark v. Los Angeles,* 187 Cal.App.2d 792, 9 Cal.Rptr. 913 (1960) (rejecting contention that widow sought an annulment of her remarriage with the intent to defraud city and pension board, court ruled that annulment judicially determined that no valid marriage ever existed between the plaintiff and her second husband); *Cottam v. Los Angeles,* 184 Cal. App.2d 523, 7 Cal.Rptr. 734 (1960) (pension legislation must be liberally construed, and annulment of remarriage restored widow to her right to benefits she enjoyed before the remarriage); *People ex rel. Byrnes v. Retirement Board,* 272 Ill.App. 59 (1933) (annulment rendered second marriage void *ab initio,* and fireman's widow was entitled to a resumption of her pension; statute providing that a pension terminated by remarriage could not be restored upon divorce or annulment did not apply, because widow received annulment prior to statute's passage).

We agree with the reasoning of these cases. The appellee does not dispute the legal validity of the appellant's annulment decree. Furthermore, we see no prejudice to the appellee's fund because, as most courts have found, the fund is maintained to pay benefits to individuals such as the appellant and did not change its position as a result of the appellant's remarriage. *See* C. Venhoff, "Divorce or Death, Remarriage and Annulment: The Path Toward Reinstating Financial Obligations From a Previous Marriage," 37 Brandeis L.J. 435, 443 (Spring 1999) ("Many courts reason a decision to reinstate workers' compensation, social security, or pension benefits does not prejudice the payment sources because they are maintained for such purposes."). Lastly, we have consistently held that "statutes creating a pension and relief fund for municipal employees should receive a liberal construction." *Cawley v. Board of Trustees of Firemen's Pension or Relief Fund of City of Beckley,* 138 W.Va. 571, 578, 76 S.E.2d 683, 687 (1953). The reasoning underlying this rule of statutory construction is that the "primary purpose of statutes providing for police and firemen's pensions is to protect the employee and his or her family." Syllabus Point 3, *Board of Trustees of Firemen's Pension and Relief Fund v. City of Fairmont,* 215 W.Va. 366, 599 S.E.2d 789 (2004). We find no reason to deviate from this rule of statutory construction in this case.

■ We therefore conclude that when the right of a surviving spouse to pension benefits has been terminated by a remarriage pursuant to *W.Va.Code,* 8–22–26(a)(2), but the remarriage is subsequently annulled, the surviving spouse's pension rights held prior to the remarriage should be restored. The second marriage is deemed erased as if it never took place, and the surviving spouse should be restored to the position held prior to remarriage.[2]

■ Applying this holding to the instant case, the circuit court erred in refusing to give the appellant's annulment any force and effect. As of December 2000, the order of annulment rendered the appellant's March 1997 remarriage void *ab initio,* and the remarriage was therefore of no legal effect. The appellant was therefore entitled to have her pension rights restored as of that order's date. Further, while it might be considered that the appellee is entitled to some credit for the benefits paid after March 1997, the record in the instant case reveals no fault on the part of the appellant in causing the continuation of those benefits nor prejudice on the part of the appellee in being denied a credit for the same. The circuit court's order must therefore be reversed.

## IV.

### *Conclusion*

The circuit court's February 28, 2003 order granting summary judgment is reversed, and the case is remanded for proceedings not inconsistent with this opinion.

Reversed and Remanded.

Justice DAVIS, deeming herself disqualified, did not participate.

Judge DARRELL PRATT, sitting by temporary assignment.

---

**2.** Our decision today applies only in the context of an annulment, and no other form of domestic